USDC SDNY
DOCUMENT
ELECTRONICALLY
FILED:        8/6/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

SALMA KILANI-HEWITT, et ano,                :       **REPORT AND**
                                                    **RECOMMENDATION**
                       Plaintiffs,          :       **TO THE HONORABLE**
                                                    **PAUL A. CROTTY**
        -against-                           :
                                                    13cv8473-PAC-FM
IMMIGRATION JUDGE JOANNA M.                 :
BUKSZPAN, et al.,
                                            :
                       Defendants.
---------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

       This pro se case represents the latest in a series of efforts by plaintiffs Salma Kilani-Hewitt ("Kilani-Hewitt") and her husband Cecil Hewitt ("Cecil") (together, the "Plaintiffs") to secure permanent resident status for Kilani-Hewitt, who is currently the subject of removal proceedings.  The defendants are the United States of America; Immigration Judge ("IJ") Joanna M. Bukszpan, sued in her official capacity; and Gioia Maiellano, sued in her official capacity as a Department of Homeland Security ("DHS") employee (collectively, the "Defendants").  Although most persons involved in removal proceedings have no interest in expedition, this case is the exception.  The Plaintiffs thus ask the Court either to adjudicate Kilani-Hewitt's eligibility for permanent resident status itself or to compel the Defendants to render a prompt decision regarding her reopened application for permanent resident status.  In their view, this relief is warranted because a decision with respect to Kilani-Hewitt's application has been unreasonably delayed.

The Defendants have moved to dismiss the Plaintiffs' complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. For the reasons set forth below, whatever the merits of Kilani-Hewitt's application for adjustment of status may be, the Defendants' motion should be granted because this Court lacks jurisdiction to act.

I.   Relevant Facts

The following facts, derived largely from the Complaint and the exhibits thereto, are assumed to be true for present purposes.

Kilani-Hewitt is a native of Iraq and a citizen of Jordan who entered the United States in November 1998. (ECF No. 1 ("Complaint" or "Compl."), Ex. B ("BIA Decision and Order") at 2). Since then, she has sought to adjust her immigration status in this country on several different grounds. First, in 1999, Kilani-Hewitt sought "refugee" or "asylum" status based on her membership in Iraq's Ba'ath political party.[1] (Id.). In her application, Kilani-Hewitt indicated that she was a Muslim. (Id.). Kilani-Hewitt subsequently withdrew that application in 2003. (Id. at 1).

One year later, in 2004, Kilani-Hewitt submitted a new application for asylum based on her conversion to Christianity. (Id. at 2-3). By this time, however, she had been placed in removal proceedings. (Id. at 1). For this reason, any adjudication of

---

[1] "Refugee" or "asylum" status may be granted to people who have been persecuted or fear they will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion. United States Citizenship and Immigration Service, Refugees & Asylum, http://www.uscis.gov/humanitarian/refugees-asylum.

her application for adjustment of her immigration status had to occur before an IJ, rather than the United States Citizenship and Immigration Service ("USCIS").  See 8 C.F.R. § 1245.2(a)(1)(i).

On April 3, 2008, an IJ issued a written decision denying Kilani-Hewitt's second application for asylum.  (BIA Decision and Order at 1).  One of the bases for the IJ's decision was that Kilani-Hewitt "had not established that she would be persecuted in either Iraq or Jordan based on her Christianity."  (Id. at 2).  The IJ's decision became final after it was affirmed by the Board of Immigration Appeals ("BIA") on April 23, 2010.  (See id. at 1-3).

In October 2003, Kilani-Hewitt married Cecil, an American citizen, who filed an immediate relative visa petition on Kilani-Hewitt's behalf.  (Id. at 1).  That filing was the first step in the process of seeking permanent resident status for Kilani-Hewitt by reason of her marital status.[2]  Cecil's petition was denied based on a finding that the couple had "failed to establish the bona fides of their marriage."  (Id. at 2 n.2).  A second petition filed in August 2004 was deemed abandoned in April 2005 after the Plaintiffs failed to appear for a scheduled interview.  (Id.).

---

[2]   A United States citizen may seek to have certain immediate relatives, including a spouse, become eligible for permanent resident status by filing an I-130 "Petition for Alien Relative."  See 8 U.S.C. § 1154; Bugianishvili v. McConnell, No. 1:15-cv-3360 (ALC), 2015 WL 3903460, at *2 (S.D.N.Y. June 24, 2015).  If the asserted relationship is found to be "bona fide," the non-citizen relative then may file an I-485 "Application to Register Permanent Residence or Adjust Status."  See  8 U.S.C. § 1255(a); Drax v. Reno, 338 F.3d 98, 114 (2d Cir. 2003); Daniel v. Dist. Dir., No. 14-cv-2060 (PAC) (SN), 2015 WL 1097375, at *3, 6-7 (S.D.N.Y. Mar. 12, 2015).

On January 2, 2013, Kilani-Hewitt moved to reopen her application for adjustment of resident status. (Compl. Exs. A, D). Thereafter, on March 18, 2013, the BIA granted that motion, which was unopposed, and remanded her case to an IJ for further findings. (See id. Ex. A). Accordingly, on April 23, 2013, IJ Bukszpan scheduled a hearing regarding Kilani-Hewitt's application for adjustment of resident status for October 14, 2015. (Id. Ex. C). Kilani-Hewitt's application therefore may soon be heard, even in the absence of judicial intervention.

Not content with the pace at which Kilani-Hewitt's application was proceeding, the Plaintiffs commenced this action on November 26, 2013. In their Complaint, the Plaintiffs allege that IJ Bukzspan's decision to schedule a hearing some two and one-half years after the BIA remand was without "proper reason," the product of her "neglect of her duties to diligently and timely resolve this case," and a violation of Kilani-Hewitt's due process rights. (Compl. at 1; ECF No. 20 ("Pls.' Opp.") at 1-4).

II.   Standard of Review

The Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), a court must dismiss a complaint if the court lacks subject matter jurisdiction over the claims asserted. In resolving the issue of subject matter jurisdiction, a court is not limited to the face of the complaint and may consider evidence outside the pleadings. Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of demonstrating the court's subject matter jurisdiction by a preponderance of the evidence. Id. (citing Makarova v.

United States, 201 F.3d 110, 113 (2d Cir. 2000)); see also Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

III.  Discussion

Kilani-Hewitt alleges that this Court has subject matter jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., the Mandamus and Venue Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., the Due Process Clause of the Fifth Amendment, and the general federal question statute, 28 U.S.C. § 1331(a).  (Compl. at 3).  Whatever the merits of these suggested bases of jurisdiction may have been before the Attorney General initiated removal proceedings, the jurisdiction-stripping provisions of 8 U.S.C. § 1252(g) ("Section 1252(g)") now deprive this Court of subject matter jurisdiction over the Plaintiffs' claims.

  A.  Applicable Law

   1.  Statutory Scheme

Under Section 245 of the Immigration and Nationality Act ("INA"), an alien who has been "inspected and admitted or paroled into the United States," may petition the Attorney General to have her immigration status adjusted to that of an "alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  When removal proceedings are not pending against the alien, the USCIS "has jurisdiction to adjudicate an application for adjustment of status;" further, although "no appeal lies from the denial

5

of an application by [the USCIS]," the alien "retains the right to renew his or her application." 8 C.F.R. §§ 245.2(a)(1), (a)(5)(ii).

The situation differs markedly once the Attorney General has commenced removal proceedings. In that circumstance, absent a discretionary remand to the USCIS, the alien's right to remain in the United States must be determined by an IJ. 8 U.S.C. § 1229a(a)(1). Moreover, "the [IJ] hearing the proceeding has <u>exclusive</u> jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. 1245.2(a)(1)(i) (emphasis added).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), which contains two provisions relevant to the Defendants' motion. First, Section 1252(g) provides that "<u>no court</u> shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to <u>commence proceedings</u>, <u>adjudicate cases</u>, or <u>execute removal orders</u> against any alien." 8 U.S.C. 1252(g) (emphasis added). Second, even if Section 1252(g) does not foreclose judicial review of a decision or action by the Attorney General, any challenge must take the form of an appeal from a "final order" of removal, 8 U.S.C. § 1252(b)(9), "filed with an appropriate court of appeals," <u>id.</u> § 1252(a)(5).

2. APA

The APA, in pertinent part, requires government agencies to resolve matters presented to them within a "reasonable time." 5 U.S.C. § 555(b). To enforce this mandate, a federal court may "compel agency action" when it is "unreasonably delayed." 5 U.S.C. § 706(1). A court's jurisdiction to enforce the APA is limited, however, when a statute "preclude[s] judicial review," or the agency decision being challenged "is committed to agency discretion by law." 5 U.S.C. §§ 701(a)(1), (2).

B. Application of Law to Facts

The jurisdictional issue presented by the Defendants' motion typically arises when an alien seeks to challenge or delay removal proceedings – not, as here, to expedite them. See, e.g., Ajlani v. Chertoff, 545 F.3d 229, 234-35 (2d Cir. 2008); Sanusi v. Gonzales, 445 F.3d 193, 198-200 (2d Cir. 2006); see also INS v. Doherty, 502 U.S. 314, 323 (1992) ("[I]n a deportation proceeding, . . . as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States."). The dearth of any reported decisions in this Circuit directly addressing whether a federal court can compel an IJ to render a prompt decision regarding an application for adjustment of status filed by an alien who is in removal proceedings therefore comes as no surprise.

In their motion papers, the Defendants rely on two jurisdiction-stripping provisions of the INA to support their assertion that this Court lacks subject matter jurisdiction to consider Kilani-Hewitt's claims. (See Defs' Mem. at 6-7). The first,

8 U.S.C. § 1252(b)(9), states that review of any "question[] of law [or] fact" arising out of a removal proceeding shall be available only through "judicial review of a final order." The term "judicial review," in turn, is defined as review by a Court of Appeals. Id. § 1252(a)(5). Here, however, the Plaintiff' claim is that there is no final order due to the IJ's unreasonable delay. This first statutory provision therefore is inapplicable. See INS v. St. Cyr, 533 U.S. 289, 298 (2001) ("strong presumption in favor of judicial review of administrative action" applies in the immigration context despite the enactment of several jurisdiction-stripping statutory provisions); cf. Nigmadzhanov v. Mueller, 550 F. Supp. 2d 540, 546-48 (S.D.N.Y. 2008) (court has subject matter jurisdiction to consider claim that USCIS unreasonably delayed adjudication of adjustment of status application interposed by alien not subject to removal proceedings).

    The second statutory provision upon which the Defendants rely is Section 1252(g). (See Defs' Mem. at 7). As noted above, that statute provides that courts may not intervene in matters arising out of the Attorney General's exercise of her discretion to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Congress incorporated this language into the INA in order "to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders." Alvidres-Reyes v. Reno, 180 F.3d 199, 201 (5th Cir. 1999). The statute thus preserves the Attorney General's ability to abandon removal proceedings "for humanitarian reasons or simply for . . . convenience." Reno v. American-Arab Anti-Discrimination Committee,

525 U.S. 471, 484 (1999).  This long-established practice, known as "deferred action," obviously is generally helpful to aliens who wish to remain in the United States.  Id.  Despite this Congressional goal, however, not every issue related to removal proceedings is beyond a federal court's purview.  Rather, as the Supreme Court explained in American-Arab Anti-Discrimination Committee, the jurisdictional carve-out in Section 1252(g) is limited to the three discrete areas expressly identified, which relate to the Attorney General's "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Id. at 482.

In the two decades since American-Arab Anti-Discrimination Committee was decided, courts in this Circuit – and other circuits – have repeatedly declined to exercise jurisdiction over cases in which plaintiffs involved in removal proceedings seek to compel the Attorney General's exercise of discretion with respect to the sorts of decisions and actions specified in Section 1252(g).  See, e.g., Arostegui v. Holder, 368 F. App'x 169, 171 (2d Cir. 2010) (court lacked jurisdiction over claim that DHS violated alien's due process rights by failing to commence timely removal proceeding); Duamutef v. I.N.S., 386 F.3d 172, 180 (2d Cir. 2004) (court lacked jurisdiction over mandamus petition seeking expedited execution of removal order); Rodney v. I.N.S., 462 F. Supp. 2d 285, 291 (D. Conn. 2006) (same); Djokovic v. Attorney Gen. of U.S., 209 F. App'x 220, 222-23 (3d Cir. 2006) (court lacked jurisdiction over claim that alien's due process rights were violated by four-year delay in adjudicating asylum application); Gomez Chavez v. Perryman, 308 F.3d 796, 800 (7th Cir. 2002) (court lacked jurisdiction over mandamus

petition to compel adjudication of application for waiver of inadmissibility); Chapinski v. Ziglar, 278 F.3d 718, 720 (7th Cir. 2002) (court lacked jurisdiction over mandamus petition to compel adjudication of application for lawful permanent resident status); Deen v. Chertoff, No. 05-CV-1341 (DMC), 2006 WL 319297, at *2 3 (D.N.J. Feb. 10, 2006) (same).

In this case, Kilani-Hewitt seeks to compel IJ Bukszpan to consider her reopened adjustment of status application immediately even though the hearing is scheduled to be held this October. Had a removal proceeding not been commenced against Kilani-Hewitt, this Court clearly would lack jurisdiction to compel the Attorney General to commence such a proceeding simply so that Kilani-Hewitt's adjustment of status application could be reviewed by an IJ. See, e.g., Arostegui, 368 F. App'x at 171. Similarly, if the Attorney General were to abandon the presently-pending removal proceeding, this Court would lack the jurisdiction to compel its continuance. See, e.g., American-Arab Anti-Discrimination Committee, 525 U.S. at 483 ("At each stage the Executive has discretion to abandon the endeavor."); see also Duamutef, 386 F.3d at 180 (mandamus available only in "actions seeking to compel the performance of a nondiscretionary duty") (emphasis omitted). Although this case arises in a concededly different procedural context, the Court is in no better position to act because the relief that the Plaintiffs seek would limit the Attorney General's discretion to "adjudicate" Kilani-Hewitt's case – an act that is specifically excluded from this Court's purview pursuant to Section 1252(g).

To be sure, there are cases in which courts have found subject matter jurisdiction to compel a prompt decision regarding an application for adjustment of status. Those cases, however, involve circumstances in which removal proceedings have not been initiated. See e.g., Boussana v. Johnson, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at *5-7 (S.D.N.Y. June 11, 2015); Nigmadzhanov, 550 F. Supp. 2d at 546-48. Relying on the APA, the "overwhelming majority" of these courts have found that whether to consider such an application and when to consider it are not discretionary decisions and thus must be made within a reasonable time. Boussana, 2015 WL 3651329, at *5 (quoting Hassane v. Holder, No. C10–314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010)); see Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[A]lthough there is no statutory or regulatory deadline by which the CIS must adjudicate an application, at some point, defendants' failure to take any action runs afoul of [APA §] 555(b). Were it otherwise, the [US]CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.").

On the other hand, the Attorney General does have the discretion to defer indefinitely the adjudication of removal proceedings that have been commenced. See American-Arab Anti-Discrimination Committee, 525 U.S. at 483-85. Indeed, several of the decisions compelling the USCIS to adjudicate adjustment of status applications in a timely manner have noted that Section 1252(g) does not apply because removal proceedings had yet to be initiated. See, e.g., Bondarenko v. Chertoff, No. 07-mc-00002,

11

2007 WL 2693642, at *7 (W.D.N.Y. Sept. 11, 2007); Al-Rifahe v. Mayorkas, 776 F. Supp. 2d 927, 933-34 (D. Minn. 2011).

Here, it is undisputed that removal proceedings have been commenced. Accordingly, the outcome of this case is controlled by Section 1252(g). That statute prohibits the Court from second-guessing the IJ's decision to adjudicate a case. That, however, is precisely what the Plaintiffs ask this Court to do by requesting that IJ Bukszpan's scheduling order be overridden. For this reason, this Court lacks the jurisdiction to compel IJ Bukszpan to act more expeditiously.

Finally, it bears mention that even if this Court could reach the merits of the Plaintiffs' claims, they would be unable to demonstrate a due process violation giving rise to general federal question jurisdiction. Indeed, it is settled law that an alien lacks a cognizable property or liberty interest in an immigration visa or green card. See Mantena v. Napolitano, No. 13 Civ. 5300 (LGS), 2014 WL 2781847, at *8 (S.D.N.Y. June 19, 2014) (collecting cases). As a consequence, any delay in deciding whether Kilani-Hewitt should be granted permanent resident status cannot be the basis for a due process claim. See Mudric v. Att'y Gen., 469 F.3d 94 (3d Cir. 2006) ("Given the discretionary nature of immigration benefits, . . . [a] delay-as-due process violation claim must fail at the threshold."); see also Arostegui, 368 F. App'x at 171 (alien failed to allege the requisite

prejudice to state a due process claim when a delay in commencing removal proceedings "allowed him nearly five additional years in this country.").[3]

IV. Conclusion

For the foregoing reasons, any decision by the Attorney General regarding Kilani-Hewitt's application for adjustment of status is discretionary and expressly excluded from judicial review pursuant to Section 1252(g) because she is in removal proceedings. The Defendants' motion to dismiss Kilani-Hewitt's complaint for lack of subject matter jurisdiction, (ECF No. 18), therefore should be granted.

V. Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen (14) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to my chambers at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See

---

[3] Calero v. INS, 957 F.2d 50 (2d Cir. 1992), cited by the Plaintiffs, does not dictate a contrary result. Although the Second Circuit found that the district court had jurisdiction to consider an immigration-related due process claim, the case dealt with the entirely different issue of whether a minor is entitled to counsel once a hearing is held, finding, in any event, no such right. Id. at 52.

Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

SO ORDERED.

Dated:  New York, New York
        August 6, 2015

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Salma Kilani-Hewitt (via U.S. Mail)
Cecil Hewitt
796 Lincoln Avenue
Brooklyn, NY 11208

Defense Counsel (via ECF)